## ST. LOUIS & S. F. R. CO. v. RAVIA GRANITE BALLAST CO. et al.

No. 7990—Opinion Filed Sept. 11, 1917.

Rehearing Denied July 30, 1918.

(174 Pac. 252.)

### 1. Receivers — Authority — Contracts—Parties.

The appointment of a receiver to take charge of the business of a lessee does not have the effect in law of changing or annulling the contract made by the lessee with the lessor before the appointment of the receiver, nor can the receiver do any act in operating the business of the lessee which will in any way impair the obligations of such contract, and an action may be maintained upon said contract by the lessor against the lessee to recover for a violation thereof, and the receiver is not a necessary or a proper party thereto.

### 2. Ballast Contract—Extent of Surety's Liability—Construction.

The contract examined and it is held that the sureties upon the bond executed by the lessee to guarantee the performance of said contract are liable for the failure of the lessee to perform the same, and that the contract does not limit the liability of the surety to September 1, 1907, but extends to all liability that arises by virtue of the nonperformance of the contract.

### 3. Payment—Application—Secured and Unsecured Claims.

Payments, in the absence of application by the debtor or the creditor, will by law be applied as credits upon debts due; and, if some are secured and others unsecured, the same will be applied on the unsecured claims, unless the payment is derived from a secured source; that is, by a sale of mortgaged property, in which event the same will be applied on the claims secured by the mortgage.

(Syllabus by Hooker, C.)

Error from District Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Action by the St. Louis & San Francisco Railroad Company against the Ravia Granite Ballast Company, a corporation, and another. Judgment for plaintiff, for part of the relief claimed, and plaintiff brings error. Reversed and remanded.

R. A. Kleinschmidt, J. H. Grant, and Fred E. Suits, for plaintiff in error.

Cottingham & Hayes, for defendants in error.

Opinion by HOOKER, C. On the 5th day of March, 1907, the St. Louis & San Francisco Railroad Company, hereinafter referred to as the "Frisco," and the Ravia Granite Ballast Company, as the "ballast company," entered into a certain contract whereby the ballast company agreed to sell and deliver to the Frisco a specified number of cubic yards of ballast at a specified price per yard, to be delivered upon the side track of the railroad company at the town of Ravia; and the essential parts of the contract necessary for the determination of this case may be stated as follows:

"Said deliveries shall begin promptly after the making of this contract, and shall be completed on or before September 1, 1907, and shall be in quantities of twenty-five (25) carloads each working day until the deliveries are completed.

"The railroad company shall lease to the ballast company sufficient rails of the weight of 56 pounds or 60 pounds per yard, together with necessary frogs and switches, so that the ballast company can therewith construct a railroad track to connect with said side track of the railroad company and to run to the quarry of the ballast company near by; the length of said track to be so laid by the ballast company shall be about 10,200 feet. After the completion of the delivery of said ballast the ballast company shall take up and deliver to the railroad company, upon its cars upon said side track, said rails, frogs and switches, and the same shall be so redelivered by the ballast company to the railroad company in as good condition as when delivered by the railroad company to the ballast company, ordinary wear and tear excepted. And for any of said rails not redelivered in such condition to the railroad company the ballast company shall pay the railroad company at the rate of $28.00 per ton. And for any of said frogs and switches that are not redelivered by the ballast company to the railroad company in such condition the ballast company shall pay the railroad company at the rate of $15.00 for each frog and $22.00 for each switch, including switch stand.

"The ballast company shall pay the railroad company rental for the use of said rails, frogs and switches at the rate of six per cent. per annum upon a valuation of $30.00 per ton.

"The railroad company shall lease to the ballast company one locomotive and one steam shovel, to be used by the ballast company in performing this contract at said quarry, or quarry track, or side track, and said locomotive and steam shovel shall be redelivered by the ballast company to the railroad company upon ninety days' notice from the railroad company requesting such redelivery and, in any event, when all the ballast shall be delivered by the ballast company to the railroad company.

"The ballast company shall pay to the railroad company for the use of said locomotive at the rate of $3.50 for every day it is in the ballast company's possession, and for the use of said steam shovel at the rate of $4.00 for every day it is in the ballast company's possession.

"Said locomotive and steam shovel shall be redelivered by the ballast company to the railroad company in as good condition as when received, ordinary wear and tear excepted, and the ballast company shall pay to the railroad company for any depreciation of the same below the aforesaid condition.

"Said rails, frogs, switches, locomotive and steam shovel shall be inspected by the inspector of the railroad company when redelivered to it by the ballast company. If said rails, frogs, switches, locomotive and steam shovel shall be destroyed while in the possession of the ballast company, the ballast company shall pay the railroad company the value of same."

Prior to the trial of the case, counsel for plaintiff and defendants, respectively, entered into the following stipulation, which was introduced and read in evidence:

"Stipulation.

"In order to dispense with the making of proof upon certain issues involved in the above cause, the parties stipulate as follows:

"First. That the contract, a copy of which is attached to plaintiff's petition, marked 'Exhibit A,' was executed by the plaintiff and defendants on the date named therein, to wit, March 5, 1907.

"Second. That the bond, a copy of which is attached to plaintiff's petition, marked 'Exhibit B,' was executed by the defendants on the day on which it bears date, to wit, the 25th day of May, 1907.

"Third. That pursuant to the contract referred to the plaintiff furnished to the defendant the Ravia Granite Ballast Company the track material set forth in Exhibit C. to plaintiff's petition, on the 19th day of March, 1907.

"Fourth. That the plaintiff furnished to the Ravia Granite Ballast Company the engine and steam shovel for the time mentioned in Exhibit D to plaintiff's petition, to wit, from June 2 to June 15, 1907.

"Fifth. That on the 15th day of June 1907, P. C. Dings was appointed receiver of all the properties of the Ravia Granite Ballast Company, and immediately took possession and control thereof.

"Sixth. That the track material described in Exhibit C and referred to in Exhibit

E and Exhibit H to plaintiff's petition remained on the roadbed, where it was originally placed until the 18th day of April, 1911. That for a short while after the receiver was appointed, the ballast properties were operated, and the track material, as it was on the roadbed, was used by the receiver; that about September 9, 1907, the receiver ceased the operation of said properties, but that the plaintiff did not remove the same until April, 1911, as above stated.

"Seventh. That during the time the receiver was operating said properties the engine and steam shovel were furnished said receiver and used by him for the time and at the price set forth in Exhibits E and G to plaintiff's petition. That no new contract was made by the railroad company with the receiver, but that the property was permitted by the company to remain in his possession and be used by the receiver for the time being.

"Eighth. That the plaintiff took up the track material leased under the contract, a copy of which is attached to plaintiff's petition, on the 18th day of April, 1911, at an expense of $450.63 as set forth in Exhibit 1 to plaintiff's petition.

"Ninth. That the receiver of the Ravia Granite Ballast Company furnished to the plaintiff, between July 16, 1907, and August 11, 1907, ballast of the value of $784.00.

"Tenth. That the amounts of the charges are correct which are set forth in Exhibit C, D, E, F, G, H, and I, attached to plaintiff's petition, and in Exhibit J, attached to this stipulation. But this shall not be an admission that the defendants or either of them are liable for said amounts or any part thereof.

"Eleventh. That the receiver of the Ravia Granite Ballast Company having failed, on demand of the plaintiff, to deliver to it the track material referred to in the contract, the plaintiff filed its petition in the district court of Carter county, Oklahoma, wherein the receivership proceedings were pending, asking for an order directing the delivery of said tract material to the plaintiff, and that on the 15th day of December, 1910, said court made an order directing the delivery of said property to the plaintiff, a copy of which order is hereto attached, made a part hereof, and market 'Exhibit A.' The receiver failed to deliver to plaintiff the track material as ordered by the court, and the same was taken up by the plaintiff April, 18, 1911, as covered by a previous paragraph of this stipulation. The receiver did not, at the time of the making of the order or subsequent thereto, have the funds necessary to pay the expense of taking up and returning said material.

"Twelfth. In 1907 the plaintiff furnished to the receiver of the Ravia Granite Ballast Company the material, supplies, equipment and service set forth in Exhibit J, hereto attached on the dates therein set out, for which it made the charges set opposite said items, amounting in all to $324.32; that the defendants claim that the $784 worth of ballast furnished by the receiver should be credited upon the account set out in the petition, while the plaintiff claims that the same should go as a credit upon the account set out in Exhibit J, attached to this stipulation, to the extent of $324.32.

"It is not the purpose of this stipulation to bind either of the parties as to the application of said credit, but to leave the same open to be determined from the evidence by the court.

"That this cause shall be submitted to the court, a jury being waived, upon the pleadings and this stipulation, and such evidence as may be offered by either party, touching the proper application of the credit of $784 worth of ballast furnished by the receiver to the plaintiff."

The plaintiff in error contended in the trial of the court below that, inasmuch as under the terms of the contract the ballast company had obligated itself to pay so much rental for the use of this material, based upon a valuation of $30 per ton, it was entitled to recover a rental thereon from the time of the delivery by it to the ballast company up to the date of the redelivery thereof to it, and that it was likewise entitled to recover the rental value per day for the engine and shovel from the time the same was delivered by it to the company up to the time of its redelivery. This was denied by the American Bonding Company, the surety of the ballast company.

It was further contended by the Frisco that the amount due by it to the ballast company for ballast that was received by it in July and August, 1907, should be applied as a credit, first, upon an amount due by the ballast company to it for supplies and fuel furnished during the life of the contract by it to the ballast company, and that the balance thereof should be credited upon the account rendered. The lower court charged the American Bonding Company, as the surety for the ballast company, for the rentals due upon this material, engine, and shovel up to September 1, 1907, and credited it with the amount of said ballast, leaving a balance of $ _____, for which it rendered judgment against the bonding company. And thereupon the plaintiff in error, asserting that it was entitled to recover more, filed its motion for a new trial, which was overruled, and it has appealed to this court.

Let us examine this contract and see what are its provisions. By that examination we ascertain: First: That the ballast

company agreed and obligated itself to sell and deliver to the Frisco, between March 5, 1907, and September 1, 1907, so many cubic yards of ballast, for which it was to receive a specified price per yard. This it failed to do, but no damages are sought here for violation of that contract. Second. In order to enable the ballast company to comply with and perform its contract, the Frisco agreed to furnish certain material, such as rails, frogs, and switches to enable the ballast company to build a spur track from the line of the Frisco railroad to its quarry for the use of which material the Frisco was to receive a rental of 6 per cent. per annum on the valuation thereof, which was fixed at $30 per ton. That this material was to be redelivered to the Frisco upon the completion of the contract, or at any time within 90 days after notice of its request had been served upon the ballast company. (It is admitted here that the ballast company received this material and constructed its track, and that the same was retained in the possession of the company and its receiver until March 18, 1911.) Third. That the Frisco was to lease a steam engine and a shovel to the ballast company at so much per day, and that it did so lease the same on June 2, 1907, and that the same was retained in the possession of the ballast company and its receiver until September 9, 1907.

The Frisco performed the provisions of its contract. It complied in every way with the obligations imposed thereby upon it. The ballast company, not only failed to furnish the ballast contemplated by the contract, but it likewise failed to pay the rentals as specified therein. In order to secure the performance of its contract it executed this bond with the American Bonding Company as its surety. What reason can be assigned why it should not comply with the conditions of the bond and pay for the breach of this contract? The Frisco was guilty of no conduct which would relieve the ballast company from its performance, then if the ballast company is not relieved, what reason can be urged why the surety on the bond, which it executed to secure the performance of its contract, is released? We see none. While it is true that the receiver took possession of the ballast company on the 15th day of June, 1907, and operated it until the 9th day of September, 1907, that of itself cannot have the effect to relieve the ballast company nor its surety from the performance of its contract or the obligations to pay for its nonperformance, or, in other words, the appointment of a receiver does not have the effect in law of changing or annulling the solemn contract that had been executed by these parties before the appointment thereof. High on Receivers (4th Ed.) § 273d, p. 326, says:

"While, as has already been shown, a receiver is in no way bound by the contracts or covenants of the person over whose estate he is appointed, it is equally true that, where a valid and subsisting contract has been entered into by his principal and a third person, a receiver who is afterwards appointed can do no act which will in any way impair the obligations of such contract, and the obligee may therefore maintain an action against the insolvent to recover damages resulting from a violation of the agreement, and to such action the receiver is neither a necessary nor a proper party. * * *"

34 Cyc. p. 258, says:

"A receiver, who is a bare custodian of property for safe-keeping, does not represent the parties having legal title, and does not stand as their personal representative, responsible for the fulfillment of their personal contracts. He stands as the representative of the court, * * * although a valid subsisting contract at the time of the appointment of a receiver which fixes the obligations and determines the rights of the respective parties, cannot be impaired by any act on the part of the receiver. * * *"

And on page 261, it is said:

"Between lessor and lessee it is held that the lease must stand until it is abrogated by a resort to some one of the conditions contained therein, and a receiver of the lessee's property cannot abrogate it."

By the terms of the contract here the ballast company obligated itself to receive from the Frisco certain materials and utensils, and to return the same to it, and to pay so much for the use thereof. The bonding company guaranteed that the ballast company would perform its contract. The contract was not performed by the ballast company, and this action is to recover the amount due under the plain provisions of the contract. By this contract the Frisco was to have so much each day for the use of the engine and shovel and interest at 6 per cent. on the valuation of the materials at $30 per ton from the date of delivery until the return thereof. The liability of the bonding company is not by this contract limited to the amount due on September 1, 1907, but extends to all damages or sums due until the contract has been performed and the conditions complied with. These conditions were not complied with until the materials, etc., were returned to the Frisco and the rentals due therefor paid.

The Frisco furnished to the receiver in 1907 fuel, etc., to the amount of $ _____, and it received in 1907 from the receiver $784 in ballast. How should this credit be applied, as neither the debtor nor creditor applied the same then or within a reasonable time thereafter. We will say to the debts then created, due or overdue—and should some be secured and others unsecured—the payments, unless derived from the secured source, as by sale of mortgaged property, should be applied on the unsecured claims. The Supreme Court of Kansas in Shellabarger v. Binns, 18 Kan. 345, said:

"* * * If neither makes any such application, then the law will make the application in the manner which is most equitable; and, in doing so, the law will generally apply the payment to the oldest debt, or to the earliest of the same debt, or to a debt that is due in preference to one that is not due; and generally, where one debt is secured and the other is not, the law will apply the payment to the debt which is not secured." Nutall's Adm'r v. Brannin's Ex'rs, 5 Bush (Ky.) 11; King v. Andrews, 30 Ind. 429; Stamford Bank v. Benedict, 15 Conn. 437.

The judgment of the lower court is reversed, and this cause remanded for a new trial.

By the Court: It is so ordered.