# KANSAS CITY SLATE & TILE ROOFING COMPANY

## vs.

## EDWIN W. POE ET AL., RECEIVERS OF THE UNITED SURETY COMPANY.

*Surety on Contractor's Bond—Termination of Liability—Cessation of Operations—Revival—Appropriation of Payment.*

Where a contract for the erection of a school house provided that if the funds intended for the purpose became exhausted, the operations on the building should be stopped without claim for damage, the architects to determine the value of the labor done and materials furnished up to that time, and contained no provision for the resumption of work in such case, *held* that if the operations were stopped for that reason and not resumed until after the lapse of fourteen months, when a new agreement was made which purported to "revive" the original contract, the surety on a bond conditioned for the due performance of the original contract was not liable to subcontractors for work done and materials furnished in connection with operations subsequent to the new agreement.          pp. 515-517

Where one has two demands on the same debtor, the one being a sole obligation, and the other an obligation with a surety, and no appropriation has been made of payments by either the debtor or creditor, the law will apply the payments to the sole obligation in preference to the secured debt.          p. 519

*Decided May 6th, 1921.*

Appeal from the Circuit Court of Baltimore City (HEUIS-LER, J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, ADKINS, and OFFUTT, JJ.

*J. Purdon Wright* and *Paul R. Kach*, for the appellant.

*Frank B. Ober*, with whom were *Janney, Stuart & Ober* on the brief, for the appellees.

URNER, J., delivered the opinion of the court.

The United Surety Company, of which the appellees are receivers, executed, on June 1, 1907, as surety for D. E. Marshall and Company, contractors, a bond for $50,000 to the Board of Regents of the Fifth District Normal School, Maryville, Missouri, conditioned for the due performance by the principal obligors of a contract to erect a Normal School building for the sum of $152,583, and to pay for all labor and materials required for its construction. The contract included the following provision:

> "It is further mutually agreed and understood by the parties hereto that this contract is made subject to the conditions set forth in the attached copy of an agreement with the Governor of Missouri and that, should the fund reserved in said agreement or any part thereof not become available, the operations on the building to be stopped without claim for damage at any time the funds in the State treasury for this work are exhausted. If the work should be stopped as above mentioned, the architects shall determine the value of the labor done and materials furnished up to that time, and payments made accordingly. The architects' decision to be final and binding on all the parties."

The agreement with the Governor of Missouri referred to was as follows:

> "We, the undersigned, representing the Board of Regents of the Maryville Normal School, hereby agree that we will not pay out, or contract to pay, the appropriations indicated below, until such time as in the judgment of the Governor there is sufficient revenue in the State treasury to the credit of the general revenue fund to warrant the expenditure of such amounts,

KANSAS CITY, ETC., ROOFING CO. vs. POE. 515

Md.]                    Opinion of the Court.

and until such time as the Governor gives his consent thereto.

"For building, heating and furnishing academic hall and power plant (deduct) $100,000.00."

After the building for which the contract provided had been partially completed, the work was stopped in June, 1908, under the provision quoted, because of the exhaustion of the funds available for the purpose. The amount then due the contractors for work and material was determined in pursuance of the terms of the contract relating to that contingency. After the lapse of fourteen months, during which no further work was done on the building, an agreement was executed by the parties to the building contract by which it was declared to be "revived." The new agreement extended the time for the completion of the building, but provided that in other respects the contract should be performed in accordance with its original terms. The construction work was resumed in the fall of 1909 and was finished about a year later.

The Kansas City Slate and Tile Roofing Company, as a subcontractor, supplied labor and material for the slate roofing, tile trimming and sheet metal work on the school building to the amount of $9,374.08, and of this the sum of $3,020.58 represents work and material furnished before the operations were discontinued in 1908. There were payments, aggregating $4,123.27, on account of the sub-contract, and when these are deducted from the claim as a whole, there is left a balance of $5,250.81 for which the contractor's bond is sought to be held liable. There can be no doubt as to the liability of the bond for so much of the claim as may be based on work done and material delivered under the contract prior to the time when its performance ceased, under its terms, because of the exhaustion of the fund to which it referred. The question to be decided is whether the bond is responsible for the portion of the claim which must be attributed to the period after the building contract was revived and the work resumed.

516 KANSAS CITY, Etc., ROOFING CO. vs. POE.

Opinion of the Court. [138

The obligation of the bond depends upon the nature, extent and duration of the contractual duty for the breach of which it is intended to afford indemnity. The contract by which the liability of the bond is to be measured contains a provision for its own termination under specified conditions. It stipulates that if the funds intended for the school building should at any time become exhausted, the work contracted for should be "stopped without claim for damages," and the value of all work and material theretofore furnished should be determined by the architects and payments made in accordance with their estimates. There was no provision for the resumption of the work after it had been stopped for the reason contemplated. This was a very significant omission. If it had been intended that, notwithstanding the absolute discontinuance of the work for lack of funds, and the final determination of the amount due for the construction then accomplished, the contractors should be bound, for an indefinite period and without regard to changing conditions, to resume operations whenever notified that the requisite funds had been appropriated by the Legislature, there would certainly have been some expression in the contract to indicate that very important and unusual purpose. The fact that the contract was altogether silent as to the resumption of the work is consistent only with the recognition by the parties of the obvious difficulties in the way of attempting to project the existing contract into a future period of uncertain remoteness in which very different conditions might prevail. It was evidently for this reason that the agreement as to the terms upon which the building operations should be conducted after additional funds had been appropriated was left for subsequent negotiations. The conduct of the parties clearly shows their understanding that the original contract became extinct when the work was discontinued under its own provisions, for they proceeded to *revive* it by a new agreement after the money required for the completion of the building was at length made available. Meanwhile there had been a total cessation of the work for a period of fourteen months, and the operating equip-

KANSAS CITY, Etc., ROOFING CO. vs. POE. 517

Md.]                              Opinion of the Court.

ment of the contractors had been removed. Under the circumstances, an express revival of the old contract or the execution of a new one was manifestly necessary to bring the parties again into an effective contractual relationship. Their agreement renewing the contract under which the building had been partially · constructed was practically equivalent to its re-execution with an added provision for the extension of the time of completion. Before the contractual relations of the parties were thus re-established, there appear to have been no duties or liabilities of the contractors, with respect to the undertaking, which had not been fully discharged, except in so far as they may not have paid for labor and material provided prior to the time when the construction work was interrupted. With this exception there was no subsisting obligation on account of the work as to which the contractors could have been said to be in default and with which their bond could be chargeable. It required a new agreement to impose upon the contractors the duty to resume the building operations, and only by a similar expression of assent could the surety on their bond have been subjected to a corresponding liability.

It was argued that, while the conditions we have considered may have terminated the liability of the bonding company so far as the owners of the building are concerned, it may nevertheless be held to have continued amenable to the claims of workmen and materialmen contracted throughout the entire period of the building operations. To support this argument cases have been cited to the effect that where, as in this instance, a building contractor's bond is subject to direct statutory liability in favor of claimants for labor and materials, the latter are not affected by alterations or extensions of the contract by which the surety's responsibility in other respects may be released. But the principle of those decisions is not, in our judgment, appropriate to the facts of this case. The question with which we are here concerned is not as to the effect of a subsequent modification of the contract upon the liability of the surety on the bond, but we are deciding whether

518 KANSAS CITY, ETC., ROOFING CO. vs. POE.

Opinion of the Court. [138

that liability applies to operations conducted in pursuance of an agreement, to which the surety was not a party, and which revived the original contract after its executory purposes had long been terminated by force of its own provisions. The court below answered this question in the negative, and in that conclusion we concur.

The appellant placed special reliance upon the case of *City of Kennett* v. *Katz Construction Co.*, 273 Mo. 279. In that case there was an agreement for the suspension of work under a sewer construction contract until certain conditions due to water in the ground should become sufficiently improved. The surety on the contractor's bond was held to be bound notwithstanding the suspension of the work under the circumstances, in view of a provision of the bond that it should not be impaired by any extension of time or change of the work under the contract although made without the surety's consent. In the present case we are not dealing with an interruption of work caused by conditions arising in the ordinary course of its prosecution, but with a definite ending of the operations under the contract in consequence of its own unqualified terms.

The only remaining question is whether, in view of the payments on account received from the contractors, there is any amount yet owing to the appellant for labor and material furnished prior to the discontinuance of the work in June, 1908. As already stated, the claim which had accrued under the subcontract at that time was $3,020.58. It included, however, an item of $1200 for ventilators, and the contract upon which the bond was based expressly excepted "ventilating" from the construction for which it provided. The elimination of this item reduces the account for which the bond was liable to $1,820.58. The payments on account were as follows: July 30, 1908, $623.27; November 13, 1909, $2,000; and February 26, 1910, $1,500; aggregating $4,123.27. It does not appear that the contractors directed, or that the sub-contractor made, any particular application of these payments, except that of $623.27, which was intended to cover the freight

charges included in the bill for slate delivered before the building operations were suspended. With that payment credited on the claim, there is a balance of $1,197.31, for which we think the bond remains liable, upon the principle stated in *Frazier* v. *Lanahan,* 71 Md. 134, that "where one has two demands on the same debtor, the one being a sole obligation, and the other an obligation with a surety, and no appropriation has been made of payments by either the debtor or creditor, the law will apply the payments to the sole obligation in preference to the secured debt." This principle is recognized in many jurisdictions, including the State in which the pending claim was contracted and the payments were received. *McMillan* v. *Grayston,* 83 Mo. App. 425; 30 *Cyc.* 1246; 21 *R. C. L.* 101. The evidence does not prove the existence of conditions in reference to the payments which might bring the case within the rule mentioned in *Amer. Fidelity Co.* v. *State,* 135 Md. 334, that a creditor who holds claims for labor and material against a contractor, and who receives payments out of money derived from work to which the contractor's bond applies, must devote them to the satisfaction of the claims growing out of that particular work and thus to the relief of the surety on the bond.

It will be necessary to remand the case so that the order disallowing the appellant's claim as a whole may be modified to the extent we have indicated.

> *Order affirmed in part and reversed in part, and cause remanded for further proceedings, the costs to be paid out of the funds in the hands of the receivers.*