[Civil No. 4731.   Filed November 26, 1945.]

[163 Pac. (2d) 676.]

THE VALLEY NATIONAL BANK OF PHOENIX, a National Banking Association, Appellant, v. ANDREW SHUMWAY, Executor of the Estate of Spencer B. Shumway, Deceased, Appellee.

Messrs. Gust, Rosenfeld, Divelbess & Robinette, for Appellant.

Mr. H. M. Van Denburgh, for Appellee.

MORGAN, J.—This action involves a guarantee of payment of accounts executed by the deceased, Spencer B. Shumway, in favor of appellant. Shumway died pending this appeal, and Andrew Shumway, executor, has been substituted as appellee. The action was instituted by the bank as plaintiff against the guarantor Shumway as defendant. The parties will be referred to as plaintiff and defendant. The facts so far as pertinent are as follows:

The defendant was a stockholder, director and vice-president of Clem Lumber Company, Inc., a corporation, which will hereafter be referred to as the company. He was an endorser on a $10,000 obligation owed

by the company to plaintiff. On May 23, 1940, plaintiff entered into an agreement with the company for the purchase of accounts receivable. On the same date, the defendant executed in favor of the plaintiff an instrument denominated "Guarantee of Payment of Accounts." This instrument referred to the agreement for purchase of accounts between plaintiff and the company as pertaining to "certain accounts owing by various persons to said Lumber Company, Inc.". It recited that the defendant is the owner and holder of considerable capital stock of the company and that it was to his interest as such stockholder that the sale of said accounts be made. The following provisions appear: Guarantor "hereby guarantees each and every and all accounts that heretofore have been or hereafter may be assigned by" the company to the plaintiff. The bank was specifically given the right "in the event any of said accounts be not paid when due, to demand payment thereof" and the defendant, upon such demand being made, was required within ten days from date of demand to "pay the balance due on any of said accounts." Upon payment, he would become subrogated to any rights or securities held by plaintiff in connection with the accounts.

Out of the first proceeds from sale of accounts, the company's obligation, upon which defendant was an endorser, was paid. On July 9, 1940, forty-seven days after the guarantee agreement was made, the defendant sold his stock in the corporation to the company, receiving contracts of the face value of $3,200. He resigned as director and vice-president. He advised the plaintiff he was no longer connected with the company, but did not give any notice of termination of the guarantee agreement. The plaintiff continued to purchase accounts from the company until December 23, 1940, when it went into chapter 11 Bankruptcy Arrangements, under which it continued to operate its business.

On July 3, 1942, the bank held unpaid accounts amounting to $19,087.98, and the company put up $12,000 face value of its contracts to apply on the payment of accounts assigned to the bank. This agreement was assented to by defendant through his attorney. A later agreement, dated October 9, 1942, was entered into between the plaintiff and the defendant, under and whereby the company paid the plaintiff the sum of $5,000 in cash and secured a release of these securities. All these agreements were entered into without prejudice to the respective rights, liabilities and claims of the plaintiff and defendant. In the last agreement it was specifically provided that $2,155.25 should be applied to the payment of certain designated accounts, reducing the total shortage to $16,932.73. This left $2,844.75 unallocated to any particular account.

The trial court found the following accounts included in the total of $16,932.73 to be fictitious: W. E. Theis $2,832.74, W. E. Theis $5,373.47, United States $2,466.77. The court further found that an account of the defendant included in the above total was actually $246.70 less, and that there had been paid on what is known as the Edith Gordon account $149.15. The aggregate of such items, amounting to $11,068.83, was deducted from $14,087.98 (the amount claimed in the complaint), leaving a balance of $3,019.15, for which judgment was entered in favor of the plaintiff.

In its motion for new trial, the plaintiff pointed out that the $11,068.83 should have been deducted from $16,932.73, the actual balance on all accounts which had been assigned to it by the company. This on the ground that the $2,844.75 unallocated by the agreement of October 9, 1942, should have been applied on accounts which the court had found to be fictitious and for the payment of which the court had held the defendant was not liable. The motion was overruled. Plaintiff appealed and cross appeal was filed by defendant.

Plaintiffs first assignment is that the court erred in denying its request for findings of fact and conclusions of law. The case was submitted and taken under advisement on November 26, 1943. On February 17, 1944, the court filed "Memorandum Opinion," making findings and directing judgment as heretofore indicated. Following this, and on the same day, request for findings of fact and conclusions of law was made by plaintiff.

█ Rule 52(a), Rules of Procedure for Superior Courts, Section 21–1028, Arizona Code Annotated 1939, does not require that requests for findings of fact and conclusions of law must be made prior to submission of the case. We think that if such a request is made seasonably after trial and before the court has ordered judgment, under the rule it might be error for the court to deny the request. Where, however, as here, the cause has been determined and order for judgment has been entered, the request comes too late.

Other assignments of error have been made by plaintiff and may be summarized as follows: (1) That the court erred in holding the guarantee agreement did not cover invalid or fictitious accounts sold by the company to the plaintiff; (2) in holding that under the guarantee the defendant was liable only on the actual balances due and unpaid on the accounts; and (3) in failing to allow the plaintiff to apply the unallocated portion of the $5,000 payment on the accounts which the court found were not covered by the guarantee.

The defendant's assignments were to the effect that the court erred in allowing judgment on any item sold by the company to the plaintiff subsequent to the time the defendant severed his connections with the company and advised the bank to that effect, and in rendering a judgment in any sum against the defendant.

██ It is obvious that the guarantee which refers to "certain accounts owing by various persons" means

"accounts receivable." The phrase "accounts owing" is tantamount to "accounts receivable." It is settled that accounts receivable are contract obligations owing to a person on an open account. *West Virginia Pulp & Paper Co.* v. *Karnes,* 137 Va. 714, 120 S. E. 321; Black's Law Dict. 3rd Ed. p. 28. By the terms of this agreement, defendant's liability was limited to "pay the balance due on any of said accounts." If there was no balance due, patently there would be no liability on the part of the defendant.

We have examined the evidence carefully and believe the trial court was wholly justified in finding that the Theis and United States accounts were invalid and fictitious. The evidence indicates that there never was anything due on the Theis accounts at the time of their assignment or at any time. The account referred to as the United States account seems to have been based upon an order, upon which no delivery was ever made and nothing ever became due. The instrument of guarantee did not in terms, and does not by implication, guarantee the validity of any accounts which might be assigned by the company to the plaintiff. The guarantee presupposes the assignment of actual accounts receivable upon which something might be due and payable. The assignment and validity of these accounts are not guaranteed but only the payment of the accounts themselves. While the guarantee did not refer to the accounts as "accounts receivable," the parties placed this construction upon the term "acounts owing." Thus, in the agreement of July 3, 1942 the following statement appears:

"That Whereas, the parties hereto entered into an agreement for the sale and purchase of accounts receivable, dated the 23rd day of May, 1940, . . . ."

Again, in the agreement of October 9, 1942 the following appears:

"Whereas, on the 23rd day of May, 1940, the Clem Lumber Company, as seller, entered into an agreement of sale and purchase of accounts receivable with the Valley National Bank of Phoenix, a National Banking Association, as buyer therein, . . . ."

In the agreement between the company and the bank, the former warranted to the bank that it was the owner of the accounts, that they were legally due and owing, and that the amount of the account was as stated in the assignment. Under this agreement, the company was liable to the bank for the accounts, whether valid or invalid, but, as stated above, the defendant's guarantee was limited to the payment of any balances due on accounts receivable. The courts cannot make contracts for the parties, and when the agreements are clear and unambiguous, they must be enforced in accordance with their terms. *Cream of Wheat Co.* v. *Arthur H. Crist Co.,* 222 N. Y. 487, 11 N. E. 74, 1 A. L. R. 150; *Russell* v. *Golden Rule Min. Co., ante,* p. 11, 159 Pac. (2d) 776.

This was a continuing guarantee based upon a valid consideration to the defendant. The transaction was not conditioned on defendant's withdrawal from the company. He had a right at any time to cancel the guarantee so as to make it ineffective for any accounts that might be purchased thereafter. This, however, he did not do. *Hibernia Bank & Trust Co.* v. *Cancienne,* 140 La. 969, 74 So. 267, L. R. A. 1917D, 402; Annotation 81 A. L. R. 792; 24 Am. Jur. 915, sec. 63, Guaranty. His withdrawal from the company would not terminate the guarantee. *Manufacturers' Finance Co.* v. *Rockwell,* 278 Mass. 502, 180 N. E. 224. See also *Magnolia Petroleum Co.* v. *Harley* (La. App.), 13 So. (2d) 84. Therefore, his liability continued to the extent of indemnifying the bank for the payment of all balances due on valid accounts receivable which it purchased from the company. *Hibernia Bank & Trust Co.* v.

*Cancienne,* 140 La. 969, 74 So. 267, L. R. A. 1917D, 402, and Annotation 81 A. L. R. 792, *supra.*

■ It is our view that the trial court properly held that the defendant was not liable for the payment of invalid or fictitious accounts sold by the company to the plaintiff, and was liable only for the balances due on the valid accounts. We likewise reject defendant's claim of nonliability for any accounts purchased by plaintiff after the defendant had severed his connections with the company. The guarantee contract is clear and unambiguous. The various authorities cited by plaintiff and defendant on this appeal, one to the effect that such a contract should be construed strictly against the guarantor, and the other that it should be liberally construed, would appear to have no application. It is only in a case where such a contract is ambiguous that resort may be had to these rules of construction. 24 Am. Jur. 911, 912, Sections 57, 58, Guaranty; Cream of Wheat Co. v. Crist Co., *supra; Hansen Service* v. *Lunn,* 155 Wash. 182, 283 Pac. 695.

■■ It is well settled that a debtor who makes a payment has a right to direct how the payment shall be applied. If, however, he gives no direction at the time of the payment, the creditor has the right to make the application as he sees fit. 40 Am. Jur. 792, 796, Sections 110, 117, Payment. Neither sureties nor guarantors have the right to control the application which either the debtor or the creditor makes of the payment. 40 Am. Jur. 813, Section 143, Payment; Note 60 A. L. R. 203.

■ In the final agreement between the parties, as we have already seen, out of the $5,000 paid by the company there was a balance of $2,844.75 which was not allocated to any of the unpaid accounts purchased by the plaintiff from the company. The plaintiff had the undoubted right to apply this sum to the payment of accounts not covered by defendant's guarantee. The

general rule appears to be that where neither the debtor nor the creditor makes application of the payment, the law will apply it to the debt which is least secured, even though it may be to the disadvantage of the guarantor. 40 Am. Jur. 814, Section 145. The equities of the parties would require such application here. *Wait* v. *Homestead Bldg. Ass'n,* 81 W. Va. 702, 95 S. E. 203, 21 A. L. R. 696; *Cain* v. *Vogt,* 138 Iowa 631, 116 N. W. 786, 128 Am. St. Rep. 216; *Kansas City Slate & Tile Roofing Co.* v. *Poe,* 138 Md. 513, 114 Atl. 710; *St. Louis & S. F. Ry. Co.* v. *Ravia Granite Ballast Co.,* 70 Okl. 273, 174 Pac. 252, 21 A. L. R. 690; Annotation 21 A. L. R. 706. The court should have allowed the application in this manner and directed entry of judgment on behalf of the plaintiff in the sum of $5,863.90.

We have carefully considered all the arguments presented by plaintiff and defendant in support of their respective positions. The guarantee is supported by a valuable consideration which, in the absence of a revocation by defendant, is sufficient to continue his liability after his withdrawal from the company. The facts disclose that he failed to notify the plaintiff that he had revoked his guarantee. Indeed, there is no claim that he cancelled the guarantee other than in notifying the plaintiff that he was no longer connected with the company. The testimony as to payment made on the Gordon account, and the amount due on defendant's assigned account, supports the trial court's conclusions.

In accordance with the views which we have expressed the judgment is modified to provide for recovery of the sum of $5,863.90, and as so modified is affirmed.

STANFORD, C. J., and LaPRADE, J., concur.