Isidor Bregoff, Respondent, *v.* Abner J. Rubien, Appellant.

First Department, December 20, 1960.

*Edward A. Winkelman* of counsel (*Winkelman & Winkelman,* attorneys), for appellant.

*Charles H. Tuttle* of counsel (*Marshall L. Rosenberg,* attorney), for respondent.

*Per Curiam.* The predicate of plaintiff's suit is a settlement agreement dated May 10, 1946 wherein defendant contracted to pay $25,000 to satisfy a judgment, for a much larger amount, which had been obtained against him by plaintiff in an accounting action. Under that agreement, a copy of which is annexed to the amended complaint, defendant paid $4,000 down, and as

to the balance of $21,000, defendant agreed as follows: " The Debtor, by these presents, does hereby assign, transfer and convey to the Creditor, Fifty (50%) Per Cent of his net income from his regular occupation in excess of Fifteen Thousand ($15,000.00) Dollars, after payment of State and Federal Income Tax. The Debtor, by these presents, further assigns to the Creditor, Fifty (50%) Per Cent of all of the said Debtor's income received by said Debtor from all sources other than his regular occupation."

In the 14 years since the agreement was made, defendant paid under that formula the sum of $17,000, leaving a balance of $8,000. Plaintiff alleges that in 1959 defendant became the beneficiary of a 25% interest in the estate of his father, who died a resident of Wisconsin on February 3, 1959; and that defendant received from the executors of the father's estate securities of a value of $46,265.08 and cash of $7,774.46.

Claiming that said securities and money were "income" received by defendant from sources other than his regular occupation, plaintiff demanded that defendant pay therefrom the balance of $8,000 due under the settlement agreement. Upon failure of defendant to comply with that demand, plaintiff — pursuant to paragraph " Seventh " of the settlement agreement — declared defendant to be in default, and commenced this suit to recover $94,997.75, the balance due under the original judgment.

The sole question — determinative of the motion to dismiss — is whether under any reasonable interpretation of the contract of settlement the provision for the application of 50% of the defendant's " income received by said Debtor from all sources other than his regular occupation " included an inheritance received from defendant's father.

We commence with the settled doctrine that a court will not make a new contract for the parties under the guise of interpreting the agreement actually made (*Heller* v. *Pope*, 250 N. Y. 132, 135; *Cream of Wheat Co.* v. *Crist Co.*, 222 N. Y. 487, 493–494). The contract does not expressly provide for the payment of any installment from any inheritance or from any gifts which defendant may receive. That omission may not be remedied by indirectly incorporating such a provision through a process of construing a formula for installment payments, which interchangeably equates " income " with " earnings ", as including the omitted categories. Our function is to construe the contract that was made and not to construct a new one. Ambiguity may not be imported, where none exists, for the purpose of extending the terms of a contract to include matters not specifically men-

tioned — whether deliberately omitted or done so inadvertently through lack of prescience.*

The fact that the word "income" may have a flexible connotation, as distinguished from principal in trust cases (*Equitable Trust Co.* v. *Prentice*, 250 N. Y. 1, 11); as defined in tax statutes (*Gavit* v. *Irwin*, 275 F. 643); or as broadly used in section 793 of the Civil Practice Act, does not make the term ambiguous in the agreement before the court. The word may not be read in isolation but its meaning must be derived from the context of the agreement.

Plaintiff would have the agreement construed so that the word "income" would include all receipts from whatever source. But there is a vast difference between "receipts" and "income" (see *Hempstead Theatre* v. *Metropolitan Playhouses,* 6 N Y 2d 311, 313). Clearly had it been the intention of the parties to include all receipts from whatever source, it would not have required too skillful draughtsmanship to have so provided. Since the parties did not do so, they must be bound by the agreement they wrote.

Hence, it must be held as a matter of law that the inheritance received from his father's estate did not constitute "income" from sources other than his regular occupation which was subject to the formula contained in the settlement agreement.

The order denying defendant's motion to dismiss the amended complaint for insufficiency should therefore be reversed, and the motion to dismiss granted, without costs.

RABIN, J. (dissenting). I dissent and vote to affirm. I cannot agree with the majority that, as a matter of law, the word "income" must be interpreted in this agreement as a word of art in its most restricted and technical sense.

While the majority concedes that "income" may have varied meanings in specified areas of legal usage they hold that in the context of this agreement the word is susceptible of only its most limited technical meaning. I cannot agree. I think there is a reasonable possibility that the parties contemplated that the word "income" have a much broader connotation than that ascribed to it by the majority.

The agreement contemplated the payment of a relatively small sum in full satisfaction of a much larger judgment debt. The method of payment of such sum, however, was apparently not to be so onerous as to inflict personal hardship upon the

---

* Our concern, of course, is not with what would have been the fair thing to do under the circumstances, but with what the contract legally obligated the defendant to do.

defendant. This explains the provision that no substantial sums were to be paid until the defendant had an occupational income of a minimum of $15,000 per annum. However, on sums in excess of this amount, 50% was to be paid to the judgment creditor. Looking to such provision may we not then reasonably say that the parties could have intended that all other moneys, of whatsoever nature, received by the defendant were to be made available for payment on the debt? I think that such conclusion, if not mandated by the language of the agreement, at least is not precluded as a matter of law. In looking to the provision of the agreement here in issue we see that payments were to be made from income received " from all sources other than his regular occupation." Certainly the use of the phrase " from all sources " indicates at least the reasonable possibility of a broader meaning to the word " income " which the majority negatives as a matter of law.

All that need here be found to require an affirmance is that a reasonable interpretation of the agreement could include as " income " the defendant's inheritance. I find no difficulty in meeting that minimal test. I think that a trial should be had so as to ascertain the intent of the parties.

BREITEL, J. P., VALENTE, EAGER and NOONAN, JJ., concur in *Per Curiam* opinion; RABIN, J., dissents and votes to affirm in opinion.

Order entered on May 31, 1960, denying defendant's motion to dismiss the amended complaint on the ground that it does not state facts sufficient to constitute a cause of action, reversed on the law, without costs, and the motion to dismiss the amended complaint for insufficiency granted.