THEILER and another, Respondents, vs. CONSOLIDATED INDEMNITY & INSURANCE COMPANY, imp., Appellant.

*September 14—December 5, 1933.*

*o*

For the appellant there was a brief by *Bitker, Tierney & Puchner* of Milwaukee, and oral argument by *Irving A. Puchner*.

For the respondents there was a brief by *Fisher, Cashin & Reinholdt* of Stevens Point, and oral argument by *R. T. Reinholdt*.

The following opinion was filed October 10, 1933:

FRITZ, J. The defendant Wilson Construction Company contracted with Oneida county to construct a public highway, at specified unit prices, and to furnish all material and labor therefor. The defendant Consolidated Indemnity & Insurance Company became the surety upon Wilson Construction Company's bond, which was required by statute, and which was conditioned for the full performance of the contract according to the specifications, and the payment "to each and every person or party entitled thereto all the claims for work or labor performed or materials furnished for or in or about or under such contract as provided in sec. 289.16 of the Wisconsin Statutes," etc. The plaintiffs, as copartners, were employed by the construction company, as subcontractors, to do the clearing, grubbing, earth and borrow excavation, special ditch excavation and shouldering, at agreed unit prices, which were the same prices that were fixed in the principal contract with Oneida county. There is no dispute about performance by plaintiffs of the work as agreed, nor about the amount that became due to plaintiffs therefor, to wit, $18,234.03. In doing the work plaintiffs used steam shovels, tractors, wagons, and other machinery, which were operated by comparatively few employees of plaintiffs. Appellant contends that because the machines were so large a factor in accomplishing the work, and because no separate account was pre-

sented of the wages of the employees of plaintiffs, their claims for these items are of a non-lienable nature. In addition plaintiffs, at the request of the principal contractor, performed some other work which the latter was also required to do under its principal contract. For that additional work $3,956.01 also became due from the principal contractor to plaintiffs, making the total indebtedness to plaintiffs $22,190.04.

The trial court found and concluded that all of the work which was performed by plaintiffs for the principal contractor was work which the latter was required to perform as part of its work under the principal contract, and that it was all performed by plaintiffs as subcontractors of the principal contractor. No exception was filed to that finding and conclusion.

Plaintiffs received from the principal contractor payments aggregating $13,500, which were credited to the latter's account, without any application to any particular item, excepting the sum of $136.50, which was applied by plaintiffs, just before commencing this action, to a charge for the use of a power shovel. Applying those payments of $13,500 on the total indebtedness of $22,190.04, left a balance of $8,690.04 owing by the principal contractor to plaintiffs.

The Consolidated Indemnity & Insurance Company contends that it is not liable as surety for that balance of indebtedness because under the principal contract and the surety's bond, which are in compliance with sec. 289.16, Stats., the surety's liability is limited (as was held in *Southern Surety Co. v. Metropolitan S. Comm.* 187 Wis. 206, 201 N. W. 980, 204 N. W. 476) to lienable claims; and that the balance of $8,690.04 is not owing for such claims because all of the principal contractor's indebtedness to plaintiffs, with the exception of three items aggregating $636.74 (which the surety concedes were lienable be-

cause for work performed exclusively by hand labor), was not lienable, because the work for which that indebtedness was incurred was performed by plaintiffs using heavy machinery to a very large extent, and in the agreed unit price the costs of the labor and the use of the machinery and the necessary operating supplies were lumped, instead of there being a separate charge for the labor alone. In that connection, the surety relies principally on the decision in *Muller v. S. J. Groves & Sons Co.* 203 Wis. 203, 233 N. W. 88. The learned circuit judge fully recognized the rule laid down in that case in so far as it was applicable to the claims owing to plaintiffs and—holding that when a machine is the thing hired at a unit price for a specified unit of time, with or without manual services and the incidental supplies required to operate it, a claim for such hire is non-lienable—he ruled that certain claims aggregating $531.50 were non-lienable. As no review of that ruling has been requested by plaintiffs, it is not necessary to consider it on this appeal. On the other hand, he concluded that charges were lienable when the work to be done by a claimant and the manner and means to be used in accomplishing it, including the using or not using of machinery by the claimant as he might see fit, and also all other details of the work and the employment of the workmen required, are entirely and exclusively under the control and direction of the claimant, and he is free to perform the work and accomplish the intended result in any manner he sees fit, subject only to discharging the ultimate requirements of the principal contract. Accordingly, he held lienable the following charges for grubbing, excavating, blasting, and shouldering, which he found was done by plaintiffs in the construction of the highway, without any right on the part of the principal contractor to direct or control the performance thereof by plaintiffs, even though in performing that work plaintiffs used, to a large extent, their

machines, in connection with the manual labor and supplies which they provided, to wit:

|  |  | Per acre. |
|---|---|---|
| $246.75 for clearing 7.05 acres @ agreed unit price of | | $35.00 |
| 235.60 for grubbing 6.72 acres @ agreed unit price of | | 35.00 |

|  |  | Per yard. |
|---|---|---|
| 11,050.80 for 46,045 cu. yds. earth excavation ..... @ agreed unit price of | | 0.24 |
| 3,647.28 for 15,197 cu. yds. bor-row excavation.. @ agreed unit price of | | 0.24 |
| 208.50 for 417 cu. yds. special ditch excavation @ agreed unit price of | | 0.50 |
| 2,845.50 for 40,650 sq. yds. shouldering .... @ agreed unit price of | | 0.07 |

21.00 for 20 hrs. labor of men removing top dirt from gravel pit.

3,217.86 for cost of labor, dynamite and other supplies, depreciation of tools, compensation insurance premium, in blasting swamps in the right of way, at the agreed compensation of cost, plus 15 %.

185.65 for cost of the labor of a finishing work crew, plus 15 % thereon as the agreed compensation.

$21,658.54 total claims held lienable.

The results thus arrived at by the trial court are not in conflict with the established rule that a claim for a mere rental charge of a machine furnished, with or without incidental labor and supplies for its operation, at a unit price for some specified unit of time, is not lienable. Although the results of the work performed by plaintiffs were achieved largely by their using their machines, in connection with their work, it was only for doing that work and achieving those results for the principal contractor that it agreed to pay plaintiffs at agreed unit prices for work completely performed by them. The principal contractor was not merely hiring or renting plaintiffs' machines. It was for complete performance of some of the work which the principal contractor was required to do under its principal contract, that it engaged plaintiffs' services and agreed to pay plaintiffs. Merely placing their machines, with men

and supplies for their operation, at the principal contractor's service would not have entitled plaintiffs to the compensation which they seek to recover on the charges which the trial court held lienable.

Under the court's rulings the principal contractor was indebted to plaintiffs in the sum of $21,658.54 on account of lienable charges, and also in the sum of $531.50 on account of charges which the court held non-lienable. If the payments, totaling $13,500, are applied on the $22,190.04, which is the total amount of the principal contractor's indebtedness to plaintiffs, there remain unpaid $8,690.04. As the payments which were made were insufficient to pay the lienable claims, as well as those which were held non-lienable, the trial court, following the rule that, in the absence of special circumstances requiring a different application, the court will, when no proper application has theretofore been made by either party, apply the payments first to the discharge of the unsecured indebtedness, applied $531.50 of the total payments of $13,500 to the items which it held non-lienable. That left $12,968.50 to apply on the lienable charges, totaling $21,658.54, or a balance of $8,690.04 owing to plaintiffs on account of lienable claims, for which the surety, as well as the principal contractor, is liable. No error was committed in that respect. As was held in *North v. La Flesh,* 73 Wis. 520, 531, 41 N. W. 633, it was entirely equitable for the court to apply all payments, which the parties had not themselves theretofore applied, to the non-lienable, unsecured charges. Recently we said in a case involving Illinois transactions:

"The law is well settled in Illinois and elsewhere that in case of a voluntary payment made by a debtor without instructions the creditor may apply the payment as he chooses. If the payment is not applied by either the debtor or creditor, the court will apply it, being governed by equitable principles." *Will of Stone,* 211 Wis. 518, 248 N. W. 446, 451.

See, also, *Field v. Holland,* 6 Cranch, 8, 3 Lawy. Ed. 136; *Stone Co. v. Rich,* 160 N. C. 161, 75 S. E. 1077; *Gardner v. Le Fevre,* 180 Mich. 219, 146 N. W. 653; 48 Corp. Jur. p. 659, notes 25, 26. And also the following cases in which the rule was applied where some items were secured by a surety bond while other items were unsecured: *Kansas v. United States F. & G. Co.* 81 Kan. 660, 106 Pac. 1040; *Kansas City S. T. & R. Co. v. Poe,* 138 Md. 513, 114 Atl. 710; *Southern Construction Co. v. Halliburton,* 149 Tenn. 319, 258 S. W. 409; *Wait v. Homestead Bldg. Asso.* 81 W. Va. 702, 95 S. E. 203, 21 A. L. R. 696; *St. Louis & S. F. R. Co. v. Ravia Granite Ballast Co.* 70 Okla. 273, 174 Pac. 252, 21 A. L. R. 690; *Pope v. Transparent Ice Co.* 91 Va. 79, 20 S. E. 940; *Cain v. Vogt,* 138 Iowa, 631, 116 N. W. 786; *Bell v. Bell,* 174 Ala. 446, 56 South. 926; *Mack v. Colleran,* 136 N. Y. 617, 32 N. E. 604.

Appellant contends, however, that the trial court's application of payments first to non-lienable claims violates, in this case, sub. (3) of sec. 289.02, Stats., because that subsection provides that all moneys paid by an owner to a principal contractor shall be and constitute a trust fund, and are not to be used by the contractor for any other purpose than to pay claims due for work, labor, and materials to persons entitled to a lien under ch. 289, Stats., and that the use of such money for any other purpose than the payment of lien claims until such claims are paid, constitutes a breach of trust and the criminal offense of embezzlement. That contention is erroneous. The work involved in this action was for a public improvement and, as to payments made to a principal contractor for public improvements, sub. (4) of sec. 289.53 controls, and sub. (3) of sec. 289.02, Stats., is not applicable. Sub. (4) of sec. 289.53, Stats., does not confine (as does sub. (3) of sec. 289.02, Stats.) the amount of the moneys declared to be trust funds to the amount of

claims owing by the principal contractor to persons entitled to a lien. On the contrary, sub. (4) of sec. 289.53, Stats., provides that all moneys paid to any principal contractor for public improvements shall be and constitute a trust fund in the hands of such contractor, and that the using of such moneys for any purpose other than the payment of all claims (regardless of whether they are lienable or not) on such public improvement so far as such moneys will pay the same is embezzlement. Consequently, as far as payments received by a principal contractor for public work are concerned, there is no statutory command that they shall first be applied to lienable rather than non-lienable claims for work performed on a public improvement.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on December 5, 1933.