Murphy, Plaintiff, vs. National Paving Company, Inc., and others, Defendants: Sun Indemnity Company, Respondent: Badger State Bank, Appellant.

*September 15—October 11, 1938.*

102

For the appellant there were briefs by *Eugene Wengert,* attorney, and *Wood, Warner & Tyrrell* of counsel, all of

Milwaukee, and oral argument by *Mr. Wengert* and *Mr. John C. Warner.*

For the respondent there was a brief by *Bender, Trump & McIntyre,* attorneys, and *Kneeland A. Godfrey* of counsel, all of Milwaukee, and oral argument by *Mr. Godfrey.*

FOWLER, J.   From the preceding statement of facts it appears that the defendant surety company is attempting to recover from the impleaded defendant the Badger State Bank the amount it paid the plaintiff Murphy, a subcontractor on public work to whom it was liable on the contractor's bond given to secure performance of the contract, in satisfaction of his claim against the contractor, on the ground that the bank took payment of a debt owed by the contractor to the bank from a deposit by the contractor of a fund known by the bank to be impressed with a trust for the benefit of laborers and materialmen.   The basis of the claim is that the retained percentages in the hands of the city of which the deposit consisted, constituted a trust fund under sub. (4) of sec. 289.53, Stats., which declares that all moneys paid to or becoming due to any principal contractor for public improvements shall be and constitute a trust fund in the hands of the contractor; "the using of such moneys   .   .   . for any purpose other than the payment of all claims on such public improvement so far as such moneys will pay the same is hereby declared to be an embezzlement of said moneys punishable as provided by law in case of embezzlement." The surety company claims it has traced the portion of the trust fund created by this statute which the bank took in payment of its note into the hands of the bank; that the bank took to itself this portion of the trust fund with knowledge that it was subject to a trust in favor of unpaid persons who furnished material and labor for the job, of whom Murphy was one; that Murphy had an equitable lien upon that portion of the fund taken by the bank in payment of its note

which entitled him to payment out of that portion; and the surety company being obligated on its bond to pay Murphy's claim and having paid it, is by subrogation to Murphy's rights entitled to payment out of it.

The statute above cited plainly constituted the retained percentages held by the city a trust fund out of which those furnishing material or labor for the job were entitled to be paid, as far as it would go. That fund was paid by the city to the contractor and by the latter to the bank. The fund was received by the bank with knowledge of the trust, as it was chargeable with knowledge of the statute and its legal effect. The bank appropriated $2,639 of the fund to itself when it took from it payment of its note. Plainly it was liable to Murphy for payment of his claim. 26 R. C. L. pp. 1348, 1351. Just as plainly Murphy's rights have passed to the surety company by subrogation. Thus the case looks *a priori*. The judgment must be affirmed unless some of the bank's contentions which we will take up in order can be sustained.

(1) The appellant claims that sub. (4) of sec. 289.53, Stats., above stated, does not apply to Milwaukee because Milwaukee is a city of the first class and sub. (1) of the section excepts cities of the first class from its operation. The section is a general statute applying to all public work. When it was enacted it contained only three subsections, (1), (2), and (3), which related to the rights of materialmen and laborers to liens on the fund constituting the contract price. Cities of the first class were excepted from its operation because the charter of Milwaukee, which was the only city of the first class in the state, contains complete provisions governing the matter of liens upon and application of moneys owing for public improvements in that city. That is why cities of the first class were excepted from its operation. But no reason exists for exempting a city of the

first class from the operation of sub. (4) and the same reason exists for sub. (4) applying to a city of the first class that exists for applying it to other municipalities, and it cannot be presumed that the legislature intended that the fund owing for public improvements in all other municipalities should constitute a trust fund in them and should not constitute a trust fund in Milwaukee. The reason for excepting Milwaukee from subs. (1), (2), and (3) not applying to sub. (4), the exception falls with the falling of the reason for it.

The trial judge considered sub. (4) an independent statute because subs. (1), (2), and (3) apply by their terms to lienable claims only, and sub. (4) is held in *Theiler v. Consolidated Indemnity & Ins. Co.* 213 Wis. 171, 250 N. W. 433, to apply to nonlienable as well as lienable claims. The limitation of subs. (1), (2), and (3) to lienable claims not applying to sub. (4), no more should the limitation of these subsections to cities other than cities of the first class be applied to sub. (4).

But the history of sub. (4) makes it in effect an independent statute. Sec. 289.53 (1), (2), (3), Stats., was enacted in 1921 by ch. 289, laws of that year. Sub. (4) was enacted in 1929 by ch. 229, laws of that year. Sub. (4) was originally introduced as Bill No. 328, S., as an amendment to sub. (3) of sec. 289.02, Stats., which then read:

"All moneys paid by the owner to the principal contractor shall be and constitute *a trust fund* in the hands of such principal contractor, to the amount of all claims due from or owing by such principal contractor for work, labor and materials or to become due from or owing by such principal contractor for such work, labor and materials to persons entitled to a lien under this chapter against said owner and his property until all such claims have been paid; the using of such moneys by such principal contractor for any purpose other than the payment of such claims, until all such claims,

except those which may be in dispute, have been paid, is hereby declared to be an embezzlement of said moneys punishable as provided by law in case of embezzlement."

Sub. (3) of sec. 289.02, Stats., which the bill proposed to amend related only to private contracts. The only amendment to it that the bill proposed was to insert the words "including money paid on public work" after the word "owner." The intended effect manifestly was to make the statute making moneys paid to contractors for private work a trust fund for the payment of claims for work and materials applicable to moneys paid for public work. It applied by its terms to *all* moneys paid for either private or public work. Moneys paid to contractors for work by the city of Milwaukee were not excepted, and were therefore included. The proposal so to amend the statute applicable to private work as to make it applicable to public work was finally accomplished by the enactment of a substituted amendment No. 328, S., creating a new statute which it numbered 289.53 (4) reading as the subsection reads in the present statute.

(2) Appellant claims that sec. 289.53, Stats., applies only to claims which have been made liens on the fund payable to the contractor, and that as Murphy did not make his claim a lien on that fund he is not entitled to the benefit of sub. (4). But sub. (4) was construed in *Theiler v. Consolidated Indemnity & Ins. Co., supra,* as applying to claims growing out of public work not made a lien as well as to such claims made such.

(3) Appellant claims that if sub. (4) does apply to contracts for public work in Milwaukee the holding of this court in *Danischefsky v. Klein-Watson Co.* 209 Wis. 210, 244 N. W. 772, limits the benefit of the subsection to materialmen and laborers and excludes subcontractors from its benefits. The basis of this claim is a statement in the opin-

ion of the court, page 215, that sub. (4) was enacted for the benefit of materialmen and workmen, not for the benefit of contractors; hence, it is claimed, Murphy being a contractor, albeit a subcontractor, he is not given any rights by the statute. We consider that the statement in the opinion does not so apply. It was made in a case wherein city orders had been delivered to a principal contractor and before being deposited and while in the possession of an agent of the contractor were attached by a creditor. The attachment had been dissolved and the attaching creditor appealed from the order, and this court reversed the ruling. The creditor claimed the city orders were not subject to attachment because he held the fund represented by them in trust for the materialmen and workmen, but he had not alleged in his affidavit of attachment and there was no proof in the record that any materialman or workman was unpaid. For all that appeared all had been paid, and if so the fund represented by the order was not exempt from attachment. It was said that the subsection must be construed with reference to the subject matter to which it was intended to apply, and so construed it could not be used to shield the contractor from his general creditors. No notice of lien had been filed and no liens on the fund had been claimed. The opinion does say that there were "no outstanding obligations of the kind described in the statute," but the word "statute" refers to sub. (4), which as we have indicated was enacted as a separate statute. Doubt as to this if any might otherwise appear is removed by the decision in the *Theiler Case, supra,* where it is held that the subsection applies to nonlienable as well as lienable claims, while subs. (1), (2), and (3) apply only to the latter. It is there held that it is immaterial, when a claimant is claiming under sub. (4) whether he has a lien or whether his claim is such as to entitle him to a lien. The only requirement is that the claim relate to or grow out of

the public improvement. If it does, the subsection applies, whether a lien has been claimed or not and whether it is lienable or not. If the statement in the *Danischefsky Case, supra,* were considered as a ruling that the subsection applied only to lienable claims, that ruling would be overruled by the later *Theiler Case, supra.*

(4) It is next claimed by the appellant that if the $4,486.45 paid by the city and deposited in the bank did constitute a trust fund and the bank be considered as appropriating it to the payment of the contractor's note on which $2,639 was owing, as the $4,000 additional was deposited at the same time as the trust fund the bank will be presumed to have taken payments of its note out of the $4,000 instead of out of the $4,486.45. We think this position untenable. It ignores the fact that the bank itself took the $4,486.45 as trustee when it received it in its possession. The bank as assignee of the fund authorized the contractor to withdraw it from the city as its agent. The obvious purpose of this was to assure that the contractor would turn the money owing over to the bank so that the bank could take payment of its note out of it. The contractor deposited the fund together with its individual funds in the bank to its account. On accepting the deposit and crediting the fund to the individual account of the contractor the bank permitted the contractor to mingle the funds. On receiving the deposit the bank held the commingled fund as a trustee and held it subject to the rule, now well established, that when a trustee commingles trust funds with his individual funds the whole commingled fund is subjected to an equitable lien in favor of the beneficiary. 65 C. J. 972; Restatement, Trusts, pp. 540, 542, § 202, comments *h* and *i*. This equitable lien can be enforced against any part of the commingled fund which can be traced into the hands of the trustee. The bank when it took payment of its note took $2,639 of the commingled

fund into possession as its own property, the amount so taken was impressed with an equitable lien in favor of Murphy, and that lien by subrogation persists in favor of the surety company which was obligated to pay the Murphy claim.

(5) The appellant next claims that if the theory of respondent as to the bank's being bound to hold the $4,486.45 as a deposit is correct the bank was only bound to hold it for a year from the time the work was completed at which time Murphy's right to sue on the bond expired, and that Murphy was bound to assert his claim against the bank within that time, which he did not do, and which his assignee, the surety company did not do. But Murphy did not sue the bank. He sued on the bond. His suit on the bond was not his only remedy to recover his damages for the misappropriation of the fund. He not only had that remedy, but he had the remedy, independent of the bond, of suing the bank, if he could trace the fund into the bank, and was limited in bringing that action only by the general statute of limitations. The surety company by subrogation resulting from its payment to Murphy, had whatever right to sue the bank that Murphy had, and might assert any such right within the time that Murphy might have asserted it, and might as well assert its claimed right in the suit pending as by commencing a new action to assert it.

(6) The appellant claims that the surety company is barred from proceeding against the bank by laches for not taking pains, while the retained percentages were still in the hands of the city, to ascertain that all claims, including Murphy's, were paid out of the percentages before it permitted the payment of the percentages to the contractor. But it would seem that it was under no greater urge to do this than was the bank. The bank was an assignee of the retained percentages. The surety company was also an assignee of

those percentages by an assignment incorporated in the indemnity agreement of the contractor attached to its written application for the bond. The one assignment was to secure the bank for payment of its note. The other was to secure the surety company against loss through meeting obligations under its bond. One of the assignees was no more bound to protect its own interests or to be more diligent toward ascertaining the existence of unpaid claims than was the other. The bank had made its disposition of the $4,486.45 long before Murphy brought suit, and its position was not changed or its rights at all affected by the delay of the surety company in impleading it, and its actions respecting the fund were in no way induced by the conduct of the surety company. Besides, laches was not urged as a defense below, and in the absence of special facts making it necessary in the interest of justice this court does not consider matters not there raised.

(7) The appellant, ignoring the trust created by sub. (4), urges that the equities of the bank are superior to those of the surety company. Even leaving the fact of the trust out of consideration, we see nothing in the situation to advance the equities of the bank over those of the surety company. The general rule is that the equities of sureties on bonds given to secure payment for labor done and material furnished on work contracts in stipulated retained percentages due on acceptance of the work are superior to those claiming under assignment of the fund from the contractor, to the extent that the surety has paid claimants entitled to payment from the fund. Such was the holding in *Haverstick v. Sheirich*, 304 Pa. 437, 155 Atl. 859, 76 A. L. R. 912. In the A. L. R. note to the case, page 917, cases in point are collected and it is stated at the outset of the note:

"It is generally held that a stipulation for the retention of a certain percentage of the consideration for the protection

of materialmen, workmen, etc., is in part an indemnity for a surety who guarantees the performance of the contract by the contractor, and that it raises an equity in his favor in the fund thus created, or to be created, to the extent he suffers loss, which takes precedence over assignments of the fund by the contractor."

Besides, as pointed out in paragraph (6) above, both parties claim under assignment of the fund from the contractor. The surety company's assignment was prior in time. Its rights under its assignment would seem to be at least as great as the bank's under its later assignment.

(8) The appellant has filed a so-called reply brief, in which matters in support of its appeal are advanced not mentioned in its original brief. It for the first time sets up the claim that the Uniform Fiduciaries Act protects the bank against the claim of the respondent. The provision relied on is a part of sec. 112.01 (10), Stats., which provides that if a fiduciary makes a deposit in a bank of fiduciary funds, the bank is not bound to inquire whether the fiduciary is thereby committing a breach of his obligation as fiduciary, and may pay out the fund on the fiduciary's check without being liable to the *principal,* unless the bank receives the deposit or pays it out with actual knowledge that the fiduciary is committing a breach of trust in drawing the check, or with knowledge of such facts that its action in paying out the check amounts to bad faith. Sub. (2) of the section provides that "a thing is done 'in good faith' within the meaning of this section, when it is in fact done honestly, whether it be done negligently or not."

These provisions of the fiduciary act are relieved of whatever effect they might otherwise have had by the fact, shown by its printed form of trust receipt which the bank exacted when it gave the contractor the right to collect the retained percentages and authorized and directed the city to pay over

the fund to the contractor. That receipt recites that the contractor received the thing receipted for as the property of the bank, and held it subject to its order for the purpose of being dealt with as the bank might direct, and if sold to pay the proceeds to the bank, and recited that the contractor held the property as the bailee of the bank. The receipt designated the thing received as the "Assignment of contract" with the city, but turning it over to the bank gave the contractor the right to collect the retained percentages and made it when collected the bailee of those funds and the bank the owner thereof and made the contractor the agent of the bank for their disposition. The bank was thus not a mere banker receiving a deposit. It received the fund as a trustee, just as the contractor would have received it, had it received it without authority from the bank and not as the agent or bailee of the bank. Under these circumstances the fiduciary act does not relieve the bank from liability for its misappropriation of the trust fund.

Some other matters are urged by appellant, but all of them, we believe, are beside the case, in view of the fact that the fund involved was a trust fund in which Murphy was one of the beneficiaries and the bank appropriated to itself a portion of the fund in excess of Murphy's claim with knowledge of the nature of the trust.

*By the Court.*—The judgment of the circuit court is affirmed.