DEBELAK BROS., INC., Respondent, v. MILLE, Appellant.

*February 26—April 9, 1968.*

For the appellant there was a brief by *Teper & Weiss* and *David M. Safer,* all of Milwaukee, and oral argument by *Terry D. Teper.*

For the respondent there was a brief by *Cahill & Fox,* and oral argument by *Daniel O. Ryan, Jr.,* all of Milwaukee.

ROBERT W. HANSEN, J.   In this case, all testimony was taken and proposed findings of fact prepared by a court-appointed referee. Particularly in a time of heavy work loads and backlogs of pending cases facing trial courts, this statutorily authorized [1] use of fact-finding referees is one available resource in increasing the number of lawsuits that can be handled in a particular court. The procedure involved should be encouraged, not discouraged. However, in this case, as they had every right to do in order to conserve costs of litigation the attorneys stipulated that proceedings before the referee would not be transcribed by a court reporter. This creates some difficulties on appeal for counsel in the case and for the appellate court. For example, it would be helpful to have before the court the receipts given and statements of account furnished by the plaintiff to the defendant over the period of years involved. However, the overall picture of the dealings between the parties involved is clear and calls for affirmance of the judgment of the trial court.

The material findings as to work performed and payments made, as stated by the trial judge, are these:

"During the year 1958, and the years 1960–1963, the plaintiff performed certain plumbing work . . . at a variety of properties which were owned by the defendant and her husband, and the property . . . owned by the corporation . . .

---

[1] Sec. 270.34, Stats.

"The plaintiff maintained a running account in connection with said work showing the various charges and credits in connection with these jobs. . . .

"All payments in connection with the jobs referred to above were made by the defendant personally and were made in cash. Such payments were credited to the said Mike Mille Account, specific jobs being credited where the payments could be identified with specific charges, and the oldest outstanding balance being credited in all other cases."

The trial judge concluded that, while the defendant was not personally liable for the balance due for work performed on the property of the barbeque-dairy store corporation, ". . . to the extent that the defendant or others made voluntary payments on the bill for work done on said property, plaintiff had a right to credit such payments against the charge made for such job, particularly in view of the fact that the defendant was an officer of the corporate owner and made payments in cash and defendant never demanded an accounting or challenged the crediting of such payments against the said charge." The trial court held the defendant liable for the balance of the open charges on the account representing charges for materials furnished and services performed on properties of the defendant which she had failed to pay.

Because of the long period of time involved, and the many dealings between the parties, special weight must be given to the trial court conclusion that the defendant "never . . . challenged the crediting of such payments against the said charge [for work done on the corporation's property]." Over the period of years involved, whatever the form of statements of account rendered, the defendant could not have escaped knowing that payments made by her were being applied to reduce the debt owed by the barbeque-dairy store corporation of which

she was treasurer. At least, she could not escape knowing that many of her payments were being applied to an account that included work done both on her properties and on the property of the corporation. Even if the findings and conclusions of the trial court in this regard were deemed to be ambiguous, they would be construed to support the judgment unless the basis for a construction that would defeat the judgment efficiently appears.[2] Since the testimony of the witnesses before the referee was not transcribed (the economy measure agreed upon by the parties), there is nothing before this court that would justify it in going beyond or contrary to the findings of the trial court.[3]

If we were dealing with a situation in which the defendant was making a first, initial payment, the situation might well be different. The defendant would be appearing at plaintiff's office in one of two possible capacities— as an individual or as an officer and agent of the corporation. She would have no knowledge of the running account including work done on her properties and on the corporation property. She would have had no knowledge, actual or inferable, that payments being made by her were being, in the absence of specific instructions by her, applied to work done on the corporation property. There would be a sounder ring to her contention on appeal that the plaintiff had no right to apply the payment made by her to any debt other than her personal one. Then defendant could argue that the rule of law that creditors may, in the case of voluntary payments made without instructions, apply the payment upon such account against the debtor as he chooses, applies only where there is one debtor with multiple accounts.[4] Then she might

[2] *Mueller v. Mizia* (1967), 33 Wis. 2d 311, 147 N. W. 2d 269.
[3] *De Toro v. DI-LA-CH, Inc.* (1966), 31 Wis. 2d 29, 142 N. W. 2d 192; *Estate of Reynolds* (1964), 24 Wis. 2d 370, 129 N. W. 2d 251.
[4] *Earl v. Napp* (1935), 218 Wis. 433, 261 N. W. 400; *Theiler v. Consolidated Indemnity & Ins. Co.* (1933), 213 Wis. 171, 250 N. W. 433.

find some shelter in the rule of law that persons, having notice they are dealing with an agent, are bound to inform themselves of the extent and limitation of the agent's authority,[5] although this rule is to protect the principal.[6] The duty of inquiry by the plaintiff would also be different in a proceeding against the corporation if it asserted all payments made by it were on debts of the corporation. In the case before us, time, knowledge and the dealings of the parties take us beyond the question of duty of inquiry. Both parties knew that there was one running account for properties of the defendant and the corporation of which she was treasurer. Both parties knew or should have known exactly how payments were being made and applied. Defendant's lack of enthusiasm for the procedure long followed came after the financial collapse of the barbeque-dairy store corporation. Unfortunately, for the application of law or equity to her cause, it did not come earlier.

We deal briefly with the contention of plaintiff-respondent that the defendant-appellant failed to raise payment as an affirmative defense in her answer and is precluded from raising it on this appeal. Payment is such an affirmative defense which must be pleaded.[7] However, plaintiff did not argue this rule prior to this appeal and the defense of payment was necessarily considered by the referee and the trial court in reaching a decision.

---

[5] *Mattice v. Equitable Life Assur. Society* (1955), 270 Wis. 504, 71 N. W. 2d 262; *Sell v. General Electric Supply Corp.* (1938), 227 Wis. 242, 278 N. W. 442; *Commonwealth Telephone Co. v. Paley* (1931), 203 Wis. 447, 233 N. W. 619.

[6] "If any other rule were followed, every principal would be at the mercy of his agent, however carefully he might limit the latter's authority, for the result would be that the agent, and not the principal, would control the limits of authority." 2 C. J. S., *Agency*, p. 1196, sec. 93 (a).

[7] *Bolick v. Gallagher* (1955), 268 Wis. 421, 67 N. W. 2d 860; *Virkshus v. Virkshus* (1947), 250 Wis. 90, 26 N. W. 2d 156; 3 Callaghan's Wisconsin Pleading & Practice (3d ed.), pp. 439, 440, sec. 21.35.

The general rule of cure by verdict or judgment applies here.[8]

Plaintiff-respondent seeks double costs on this appeal based on the omission of an appendix in defendant-appellant's brief as required by court rule, sec. 251.34, Stats. On motion to strike appellant's brief, this court on February 8th extended time to file a brief with appendix and ordered appellant to pay $50 in motion costs. The brief and appendix were filed. The motion costs were paid. While plaintiff-respondent did go to the expense of printing an appendix, it should have awaited the outcome of its motion. The ruling on the motion determined what was to be done and what penalty for failure to comply with the rules was to be imposed. Request for double costs denied.

*By the Court.*—Judgment affirmed.

---

[8] "While this form of pleading is not approved, it is defective as to form only and may be cured by verdict or judgment after trial. In 41 Am. Jur., *Pleading*, p. 573, sec. 404, the general rule is stated in the following language: '. . . that where the parties have attempted to join an issue to be tried, and it has been tried, however defective in form the pleadings may be a verdict for the one or the other will be held to cure such defective pleadings, that is, will cure them as to their form, and supply all omitted necessary averments concerning essential facts relied on, provided the proof or admission of such facts was necessarily considered before the verdict was rendered, for the verdict must be assumed upon proof of facts which justified it. . .'" *Bjelde v. Dolan* (1946), 248 Wis. 153, 156, 21 N. W. 2d 258. *See also Wauwatosa v. Milwaukee* (1954), 266 Wis. 59, 62 N. W. 2d 718.