In the Matter of Stephen James
SCANNELL and Lauri Marie
Scannell, Debtors.

Elizabeth A. Scannell HOWE, Plaintiff,

v.

Stephen James SCANNELL, Defendant.

Adv. No. 85–0076–7.

United States Bankruptcy Court,
W.D. Wisconsin.

April 22, 1986.

Timothy J. Peyton, Kepler Law Offices, Madison, Wis., for plaintiff.

William T. Read, Madison, Wis., for defendant.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

On February 6, 1980, the Circuit Court of Brown County, Wisconsin, in case no. 79 CV 1734, dissolved the marriage between the plaintiff, Elizabeth Scannell Howe, and the debtor/defendant Steven James Scannell. The final judgment of divorce, which incorporated a stipulation ("the divorce stipulation"), required the defendant to pay the following relevant amounts: A. as property division: 1) $7,250.00 bearing 9% annual interest, payable in equal bi-weekly installments of $140.00; 2) approximately $8,300.00 for the parties' 1979 joint tax liability arising out of the sale of certain property in Mequon; 3) all other obligations which existed as of the commencement of the divorce action which were not specifically dealt with in the stipulation; B. as maintenance or support: 1) $1,100.00 per month in maintenance for thirty months and $500.00 per month for an additional six months, or until the plaintiff remarried, payments to be in lieu of any other claim for maintenance; 2) $500.00 per month in child support; 3.) reasonable medical, dental, surgical, hospital, optical, and funeral expenses incurred by the minor children, until the children reached age eighteen, completed high school, or completed college. The parties agreed that any modification or waiver of the terms of the divorce stipulation would be effective "only if made in writing and executed with the

same formality as this agreement." (Divorce stipulation, clause 9.)

In June of 1981, the plaintiff remarried and maintenance terminated. Prior to that time the defendant had fallen behind on his payments. On January 24, 1983, the plaintiff and defendant entered into a stipulation ("the January 24th stipulation") which fixed the amount of the property division arrearage at $5,454.28 and the maintenance arrearage at $1,529.05.

By the January 24th stipulation, the defendant agreed to schedule payments of the arrearages with 9% annual interest. The stipulation provided that the installments would be applied first to interest and then to principal. The stipulation did not specify how the principal payments would be allocated between property division and maintenance. Since signing the January 24th stipulation the defendant has paid $5,450.00 on the arrearage obligations. The defendant also paid additional income taxes of $149.03 and $550.28 respectively for the years 1978 and 1980, in which years the defendant and plaintiff filed joint income tax returns.

On December 14, 1984, the defendant filed for relief under chapter 7 of the Bankruptcy Code. As of that date, a total of $1,040.00 was due to Dr. Swetlik for "reasonable and necessary" dental services provided to the defendant's minor child, James. The parties have stipulated that the defendant would not have agreed to the rendition of those services if the plaintiff had not agreed to first submit the dental bills to her insurance company, with the defendant to pay only the portion not covered by insurance.

As of December 14, 1984, a total of $297.75 was due to Bellin Memorial Hospital for services rendered to the minor children. The parties have stipulated that the amount in question was in the nature of child support, and that the hospital "charged off" the account upon receiving notice of the defendant's bankruptcy. In his brief the defendant agreed to accept liability for any balance actually due to Bellin Hospital for services rendered to the minor children.

Certain other pre-petition obligations were listed in the plaintiff's complaint, but she admitted in her brief that the defendant has either paid those debts or has stipulated to their nondischargeability, thus leaving at issue only those matters outlined above. The parties have submitted this controversy entirely on stipulated facts, and briefs.

## I.

As of January 24, 1983, $5,454.28 was past due for property settlement and $1,529.05 was past due for maintenance. The parties agreed that those amounts would carry 9% annual interest until paid. The defendant now argues that the court should find, contrary to the parties' January 24th stipulation in settlement of plaintiff's action to collect the arrearage, that the amount of overdue maintenance is only $1,015.38 based on a determination of the clerk of the circuit court in September, 1981. The defendant has advanced no legal theory to support such a result. Principles of res judicata are as applicable to stipulated settlements as to fully litigated judgments. In the absence of an allegation of lack of jurisdiction or fraud on the circuit court it would be wholly inappropriate to disturb the prior stipulation. Further, the stipulation is a binding contract which liquidates the amounts in dispute.

## II.

The plaintiff argues that the entire $5,450.00 which the defendant has paid should be allocated entirely to property settlement, the portion of defendant's obligation which is dischargeable in his bankruptcy. She reasons that because Wisconsin divorce law requires the court to divide the parties' property and transfer title accordingly (WIS.STAT. § 767.255) the debt for property settlement became due at the time of the divorce, whereas the debt for maintenance accrued periodically thereafter. In fact, the terms of the divorce

judgment provided for the property settlement to be paid in bi-weekly installments.

The defendant predictably argues that the $5,450.00 should first be allocated to the nondischargeable maintenance arrearage and then to property settlement. The defendant alleges that he intended his payments to be applied first to maintenance in order to "keep current" on those payments. This is a disingenuous argument since the defendant's maintenance obligation had ceased upon the plaintiff's remarriage in 1981, and all payments made under the January 24th stipulation were to cure arrearages. The defendant also wants one-half of the 1978 and 1980 tax payments credited to the maintenance arrearage because the parties filed joint returns for those years. He cites *Young v. Young,* 124 Wis.2d 306, 369 N.W.2d 178 (Wis.App. 1985) in support of his allocation. *Young* considered only tax liability arising from the sale of the parties' jointly owned house. In this case the defendant was liable under the divorce stipulation for all unlisted debts including tax liability existing at the time divorce was filed. Thus, the 1978 excess tax liability was entirely the defendant's responsibility. Further, the defendant has not alleged or demonstrated that the plaintiff had any liability even without considering the divorce judgment for the tax paid in either 1978 or 1980. The joint filing does not by itself compel a finding of joint liability. Only a showing of the individual incomes of the parties would suffice to do so. The defendant has thus failed to articulate a legal basis for the credits sought.

Both of the suggested allocations are seriously flawed. The January 24th stipulation required relatively small installment payments and a lump sum payment prior to December 31, 1983. All payments were first to be applied to interest. A total of $489.84 in interest had accrued as of December 28, 1983. Since no single installment could extinguish either the maintenance or the property division obligations the post-stipulation interest accrued on both. Thus, at least $489.84 of the defendant's payments went to reduce indebtedness attributable to both categories.

In making the allocation of the payments the burden of proof as to all factual issues is upon the plaintiff as the party objecting to dischargeability. *In Re Vande Zande,* 22 B.R. 328 (Bankr.W.D.Wis.1982). The legal issues presented must be resolved primarily by reference to state law. Wisconsin law is clear that when a debtor owes a creditor multiple debts, the creditor must apply all payments in accordance with any instructions made by the debtor at or before the time of payment, unless a prior contrary agreement of the parties specifies the manner of application. *See Moser Paper Co. v. North Shore Pub. Co.,* 83 Wis.2d 852, 266 N.W.2d 411 (1978); *In Re Will of Stone,* 211 Wis. 518, 531–32, 248 N.W. 446 (1933). The law is equally clear that in the absence of an agreement between the parties or instructions by the debtor, a creditor is generally free to apply payments as he chooses, so long as the rights of third parties are not affected. *See Moser Paper Co., supra; Debelak Bros., Inc. v. Mille,* 38 Wis.2d 373, 378, 157 N.W.2d 644 (1968); *Will of Stone, supra; Nelson v. Davison,* 152 Wis. 567, 570, 140 N.W. 334 (1913). If neither party allocates payments the court will apply the payments in accordance with equitable principles. *See Moser Paper Co., supra; Theiler v. Consolidated Indemnity & Ins. Co.,* 213 Wis. 171, 176, 250 N.W. 433 (1933); *North v. LaFlesh,* 73 Wis. 520, 530–31, 41 N.W. 633 (1889).

Although it is clear under Wisconsin law that the debtor's ability to direct payment ceases once the payment is made and becomes the creditor's property, it is not clear when the creditor's ability to allocate payments ceases. An examination of the law in other jurisdictions reveals a wide range of opinion. The traditional common law rule appears to have been that the creditor could make such application within a reasonable time after payment. *See St. Paul Fire and Marine Insurance Co. v. United States,* 309 F.2d 22, (8th Cir.1962) *cert. den.,* 372 U.S. 936, 83 S.Ct. 883, 9 L.Ed.2d 767 (1963); 60 Am.Jur.2d, Payment ("Am. Jur.") § 85 at p. 670 (1972). The majority rule seems to be that the "reasonable time"

within which the creditor may make his application ceases once a controversy on the subject has arisen, or an action is commenced. *See* Am.Jur. *supra* § 85 at 670–71. Since there is no evidence in the record that either the defendant or the plaintiff previously allocated the payments the court must now allocate the payments in accordance with "principles of equity." *Moser Paper Co. supra.*

Calculation of the exact balance of each debt has been rendered difficult by the failure of the plaintiff to detail the exact dates and amounts of payments. Defendant's exhibit 5, which is the most complete summary in the record, shows total payments in excess of the amount the parties have expressly stipulated were made. The excess appears to exactly equal the amount of the tax payments which the defendant alleges should be credited against the arrearages.

Obviously neither party contemplated the bankruptcy implications of failing to allocate payments. Based on the language of the January 24th stipulation it appears more likely than not that all payments were intended to be applied first to interest, then pro-rata to reduce both debts in question. Approximately 28% of the total arrearage was stipulated to be maintenance, and thus 28% of the payments not attributable to interest should be allocated to the principal balance due for maintenance. The remaining 72% should be allocated to the dischargeable property division arrearage. The following calculations demonstrate the allocation:[1]

| | |
|---|---|
| stipulated payments | $5,450.00 |
| interest on principal balance | − 751.73 |
| total amount paid on principal | 4,698.27 |
| | |
| stipulated balance due on 1/24/83 | 7,015.47 |
| amount paid on principal | −4,698.27 |
| total principal balance at bankruptcy | 2,317.20 |
| | |
| 72% allocated to dischargeable property division | 1,668.38 |

1. No credit is given for defendant's payment of the 1978 and 1980 tax liabilities.

2. The plaintiff is entitled to post-petition interest, at the contractual rate provided in the Janu-

| | |
|---|---|
| 28% allocated to maintenance | $ 648.82 |
| 9% interest from bankruptcy to date of judgment [2] | 73.41 |
| total nondischargeable maintenance | 722.23 |

### III.

The plaintiff claims that the debt owed to Dr. Swetlik is nondischargeable. The defendant asserts that the plaintiff lacks standing to litigate the dischargeability of a debt to a third party, and that, in any event, the plaintiff agreed to accept liability for a portion of the bill. It is not necessary in this proceeding to determine whether the debt, as between the defendant and Dr. Swetlik, is nondischargeable, or whether the plaintiff has standing to litigate the question. All that must be determined is whether any debt which the defendant may owe under the divorce stipulation as a result of the plaintiff's joint liability to Dr. Swetlik is nondischargeable.

The divorce stipulation requires the defendant to pay reasonable medical, dental, and surgical expenses on behalf of the minor children. The defendant admitted the expense in question was "reasonable and necessary...." The parties stipulated that the defendant would not have agreed to pay Dr. Swetlik if at least a portion of the bill was not covered by insurance. The parties further stipulated that they never discussed what the defendant's obligation on the dental bill would be in the event no insurance coverage existed. However, the divorce stipulation requires a formal, written agreement in order to modify any of the terms of the stipulation. It is clear that the handwritten note, defendant's exhibit 8, signed "Betsy," in which the plaintiff informed the defendant what his obligation on the orthodontic charges would amount to (apparently after deduction for the portion to be paid by insurance), does not come close to meeting the requirement contained in the divorce stipulation of a

ary 24th stipulation, on the nondischargeable portion of the debt. *In Re Sobel*, 37 B.R. 780, 786 (Bankr.E.D.N.Y.1984). *See In Re Chambers*, 36 B.R. 42, 45–46 (Bankr.W.D.Wis.1984).

writing "executed with the same formality as this agreement." The obvious purpose of that requirement is to prevent just such disputes as this. The defendant has alleged no facts which might justify this court's disregard of the clear terms of the divorce stipulation. The defendant remains liable under that stipulation for the expense in question.

The fact that the defendant may be directly liable to Dr. Swetlik is irrelevant since the debt in question remains one for nondischargeable support. *In Re Rodriguez*, 22 B.R. 309, 311 (Bankr.W.D.Wis. 1982). This is not a debt which has been "assigned" to another entity and thus falls within the statutory exception to nondischargeability. *See id.* It is rather a primary obligation of support for which the defendant is jointly liable both to Dr. Swetlik and the plaintiff, *see id; In Re Spong*, 661 F.2d 6, 10–11 (2d Cir.1981), and is nondischargeable.

### IV.

The plaintiff has asked for costs, disbursements and attorney's fees in this action. Paragraph 3(e) of the January 24th stipulation provides for the recovery of "costs" and "disbursements," but not attorney's fees. Attorney's fees are not "disbursements" as the latter term is commonly used. *See e.g.* WIS.STAT. § 814.04(1), (2) (attorney's fees and disbursements listed as separate categories of costs). No contractual basis for an award of attorney's fees has been established. However, state circuit courts may, after considering the relative financial resources of the parties, award a reasonable attorney's fee in "actions affecting the family." *See* WIS. STAT. §§ 767.02, 767.262.[3] This proceeding appears to fall within the statutory definition of section 767.02(1)(i) and thus attorney's fees may be awarded unless a countervailing federal policy prohibits such an award.

This action was brought under 11 U.S.C. § 523(a)(5) as a complaint to determine dischargeability. It is well settled that attorney's fees incurred in prior state court actions to secure or enforce maintenance awards are nondischargeable as ancillary to the primary debt. *See e.g. In Re Williams*, 703 F.2d 1055 (8th Cir.1983); *Nichols v. Hensler*, 528 F.2d 304 (7th Cir. 1976); *In Re Chambers, supra; In Re Rodriguez, supra.* It is much less clear whether attorney's fees may be awarded in an adversary proceeding in bankruptcy to enforce a maintenance debt. There is no federal rule allowing attorney's fees in section 523 actions, with the exception of the fees allowed under section 523(d) for a consumer debtor who prevails in an action

---

**3.** WIS.STAT. § 767.02 provides in relevant part:
(1) Actions affecting the family are:
....
(i) To enforce or modify a judgment in an action affecting the family granted in this state or elsewhere. If a petition requesting enforcement or modification of a judgment in an action affecting the family which was granted by a court of this state is filed in a county other than the county in which the judgment was rendered, the petitioner shall send a copy of the petition and summons to the clerk of the court in which the judgment was rendered. The petitioner shall send a copy of any order rendered pursuant to this petition to the clerk of the court in which the original judgment was rendered.
WIS.STAT. § 767.262 provides:
*Award of attorney's fees.* (1) The court, after considering the financial resources of both parties, may do the following:
(a) Order either party to pay a reasonable amount for the cost to the other party of maintaining or responding to an action affecting the family and for attorney fees to either party.
(b) If one party receives services under s. 46.25 or services provided by the state or county as a result of an assignment of income under s. 49.19, order the other party to pay any fee chargeable under s. 46.25(6) or the cost of services rendered by the state or county under s. 49.19.
(2) Any amount ordered under sub. (1) may include sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment.
(3) The court may order that the amount be paid directly to the attorney or to the state or the county providing services under s. 46.25 or 49.19, who may enforce the order in its name.
(4) No court may order payment of costs under this section by the state or any county which may be a party to the action.

brought by a creditor, without substantial justification, under section 523(a)(2). It is easy to conclude that if Congress intended to allow attorney's fees under other subsections of section 523 it would have expressly so provided.

In diversity cases the rule appears to be that so long as no federal law expressly prohibits fees, a state law creating a right to attorney fees, which reflects a substantial state policy, should be followed. *Sioux County v. Nat. Surety Co.*, 276 U.S. 238, 241–44, 48 S.Ct. 239, 240–41, 72 L.Ed. 547 (1928).

> Disregarding mere matters of form it is clear that it is the policy of the state to allow plaintiffs to recover an attorney's fee in certain cases.... It would be at least anomalous if this policy could be thwarted and the right ... destroyed by removal of the cause to the federal courts.
>
> ....
>
> That the particular mode of enforcing the right ... is not available to the federal courts ... does not preclude the recovery.

*Id.* at 243–44, 48 S.Ct. at 240–41. *See also Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 555–57, 69 S.Ct. 1221, 1229–30, 93 L.Ed. 1528; *Henlopen Hotel Corporation v. Aetna Insurance Company*, 38 F.R.D. 155 (D.Del.1965); *Gandall v. Fidelity and Casualty Co. of New York*, 158 F.Supp. 879 (E.D.Wis.1958); *Kellems v. California CIO Council*, 6 F.R.D. 358 (N.D.Cal.1946); 6 Moore's Federal Practice ¶ 54.77[2] at 1712–13 (2d ed. 1985).

■ Although this problem seems primarily to have arisen in diversity cases, the same reasoning applies in bankruptcy since the party seeking to enforce the state right usually has no practical alternative but to litigate in the federal forum. Under the principles of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), when the bankruptcy court hears a matter that turns on state law it must apply the substantive law of the state. 3 *Collier on Bankruptcy* ¶ 502.02 (15th ed. 1985); 1A *Moore's*, Federal Prac-

tice ¶ 0.322[1], n. 1 at 3293–94 (2d ed. 1985). Even when a federal statute is applicable, the involvement of non-federal rights may call for the application of state law in certain phases of the decision. *Id.*, ¶ 0.323[1] at 3321–22. In the instant matter, the established state policy favoring attorney's fees in "actions affecting the family," and the presence of significant related questions of state law in the litigation justifies an award of attorney's fees. Such an award is proper since no federal law or rule purports to affirmatively proscribe the award. *See Kellems, supra.*, 6 F.R.D. at 360.

In *In Re Teter*, 14 B.R. 434 (Bankr.N.D. Tex.1981), the only bankruptcy case apparently dealing with this exact question, the court allowed an award of attorney's fees under a state statute. In that case the debtor's ex-wife filed a complaint to determine dischargeability of a support obligation which had arisen under a divorce stipulation. The ex-wife claimed attorney's fees under a statute allowing such fees in suits based on contracts. Judge Gandy stated:

> *Nunnally* [506 F.2d 1024] and many other cases which hold that the attorney's award is non-dischargeable if originally made by the State Court in the divorce proceeding as a indistinguishable part of the support award are not necessarily in point on the issue of whether this Court should not follow Art. 2226, but those cases are persuasive in indicating that the liability is that created by state law, and that state law should control. I concude that under Art. 2226, reasonable attorney's fees in favor of the wife are permitted, and should be established by this Court in a non-dischargeability context.

*Id.* at 437. The reasoning of *Teter* is applicable to this case. The plaintiff is entitled to reasonable attorney's fees subject to the statutorily required consideration of the parties' relative resources. Unless the parties can stipulate to the amount of attorney's fees an evidentiary hearing on the matter will be required.

**568**

### V.

A total of $722.23 in unpaid maintenance including interest from the date of the debtor's bankruptcy until the date of judgment is nondischargeable. Any remaining balance on the $1,040.00 dental bill or the $297.75 debt to Bellin Hospital is also non-dischargeable. The plaintiff is further entitled to costs and disbursements and may be entitled to statutory attorney's fees in a reasonable amount.