# LYMAN LUMBER OF WISCONSIN, INC.,
Plaintiff-Appellant,

v.

# Dean E. THOMPSON, Lolly A. Thompson, De-Lollypop Dairy Ltd., a Wisconsin corporation, Defendants-Respondents,

# The FEDERAL LAND BANK OF ST. PAUL and United States of America, acting through the Farmers Home Administration, Defendants.

Court of Appeals

*No. 86–0789. Submitted on briefs November 5, 1986.—Decided March 10, 1987.*

(Also reported in 405 N.W.2d 708.)

For the plaintiff-appellant there were briefs submitted by *Joseph R. Mirr* of *Garvey, Anderson, Kelly & Ryberg, S.C.,* of Eau Claire.

For the defendants-respondents there was a brief submitted by *T. Gregory Amann* of *Richardson Law Office* of Spring Valley.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Lyman Lumber of Wisconsin, Inc., appeals a judgment dismissing its action to foreclose a mechanic's lien on Dean Thompson's farm. Lyman supplied the materials for a barn erected on Thompson's farm by Loesel Construction. Thompson paid Loesel in full, but Lyman applied some of Loesel's

---

\* See Callaghan's Wisconsin Digest, same topic and section number.

payments to other Loesel accounts. The trial court concluded that Lyman was required to apply the payments to satisfy the debt on the Thompson project.[1] We agree and affirm the judgment.

Lyman made several deliveries of materials to the Thompson job site between September 30, 1982, and November 30, 1983. At the time of Lyman's second delivery of materials on October 29, 1982, valued at more than $41,000, Loesel gave the Lyman driver two checks totaling $17,551.14. At that time, Loesel had six different contract accounts with Lyman, each representing a different project. The October 29 payments were not applied to the Thompson project, but were applied to older and unpaid Loesel accounts relating to other projects. After applying a discount Lyman regularly credited its contractor customers, Lyman calculated that Loesel owed $18,240.94 on the Thompson project.

If Loesel's October 29 payment of $17,551.14[2] had been applied to the Thompson project, that account would have been paid in full as to the principal due, and the service charges would have been greatly reduced. The trial court was unable to determine whether Loesel expressly directed application of the October 29 payment to the Thompson project, but

[1]The trial court also concluded that Lyman was limited by sec. 138.04, Stats., to 5% annual interest on any amount outstanding after the notice of intent to file a claim for a lien was served. Lyman contends that the court should have applied the one and one-half percent monthly interest rate specified in Loesel's contract with Lyman. Because we conclude that there is no basis for a lien on Thompson's property, we decline to address this issue.

[2]Resulting in a credit of $10,648.92 after the contractor discount.

concluded that that payment should have been credited to that project. We agree.

The general rule regarding applicability of payments where a debtor owes a creditor multiple debts was recently summarized as follows:

> Where a debtor owes a creditor multiple debts, a payment by the debtor should be applied to one or another of the debts as the debtor directs. *F.A. Patrick & Co. v. Deschamp,* 145 Wis. 224, 129 N.W. 1096 (1911). Where the debtor fails to direct the application of the payment to a particular debt, the creditor may apply the payment as he choses. *Earl v. Napp,* 218 Wis. 433, 261 N.W. 400 (1935); *Debelak Bros., Inc. v. Mille,* 38 Wis. 2d 373, 157 N.W.2d 644 (1968). If neither the creditor nor the debtor applies the payment, then the court makes the application in accordance with equitable principles. *Theiler v. Consolidated Indemnity & Ins. Co.,* 213 Wis. 171, 250 N.W.2d 433 (1933). These well-accepted rules regarding the application of payments are subject to an equally well-recognized exception, the so-called "identical property" exception. *Sorge Ice Cream & Dairy Co. v. Wahlgren,* 28 Wis. 2d 220, 223, 137 N.W.2d 118 (1965). This rule is that, when a payment made to a creditor is known by the creditor to be derived from a particular source or fund, the creditor must apply it to the exoneration of the debt related to that source or fund, at least where the rights of third parties are concerned.

*Moser Paper Co. v. North Shore Publishing Co.,* 83 Wis. 2d 852, 857–59, 266 N.W.2d 411, 414–15 (1978).

Generally, a creditor is allowed to apply the payments as he chooses if he is unaware of a third person's rights. *See* 70 C.J.S. *Payment,* sec. 79 (1951).

Where the debtor is a contractor making payments to a materialman, the direction by the contractor to apply the payment to a particular account need not be manifest in words, and his apparent intent must be given effect. 53 Am. Jur. 2d *Mechanics' Liens*, sec. 329 (1970); Restatement (Second) of Contracts, sec. 258 comment b (1981).

The "identical property" exception applies where the creditor has actual or constructive knowledge of the origin or source of the fund from which he received payment. *See* Annotation, *Right of debtor who pays creditor to control application of payments made by latter to his creditor with proceeds of original payment,* 130 A.L.R. 198 (1941). We agree that a creditor's duty to apply the payment to exonerate the debt related to the source of the fund arises if the creditor knew the source or had "notice of facts which put him on inquiry as to the source of the payment." *See Barnett v. Concrete Placing Co.,* 120 So. 2d 628, 632 (Fla. Dist. Ct. App. 1960).

Here, there are two independent bases upon which to find that the payment delivered to Lyman should have been credited to Thompson's benefit. We hold that when a payment is made at a job site contemporaneous with the delivery of materials, it is presumed that the payor intends to credit the account relating to that project. This presumption may be rebutted by evidence demonstrating that the payor intended to credit some other account. We further hold that when a payment is made under such circumstances, the materialman is presumed to have knowledge that the owner of the project is the apparent source of the funds. This presumption may

128

be rebutted by evidence that, at the time the payment was applied, the creditor had reason to believe that the funds were derived from some other source. No such evidence was presented here.

Lyman was obligated to apply the payments in accord with Loesel's apparent intent. Lyman must be charged with its driver's knowledge of the delivery at the Thompson site and receipt of the payments made contemporaneous with that delivery. A reasonable person would assume that Loesel meant to apply the payment to the materials just delivered. Lyman should have applied the payments accordingly.

Additionally, Lyman had constructive knowledge that Thompson was the source of the funds. When the source of the funds is known, the identical property rule requires the creditor to apply payments against the debt related to the source of such funds. When payments are made at a job site contemporaneous with the delivery of materials, it is reasonable to infer that the funds were derived from the owner of the project. Such constructive knowledge is sufficient to invoke the identical property rule in regard to the application of such payment.

This situation is substantially different from one where the payment is sent by mail and cannot be logically connected to a specific portion of a general account. Because Thompson was the apparent source of the payment from information available to Lyman at the time the payment was applied, Lyman should have applied the payments for Thompson's benefit.

Lyman argues that the trial court has imposed on a creditor a duty to inquire as to the source of funds and that this duty impermissibly extends the trust fund required by sec. 779.02(5), Stats., to third parties.

Lyman also argues that any expansion of the law creating a duty to inquire should be made prospective because a retroactive ruling would be onerous to the construction industry.

Lyman mischaracterizes the trial court's decision. The court noted that its decision did not mean that the creditor need ascertain the source of any nonspecified, nonidentifiable payment by a contractor who has multiple accounts. Rather, Lyman's duty to apply the payment to the Thompson project arises because of Loesel's manifest intent to apply the payment to the Thompson project and Lyman's constructive knowledge of the source. If Lyman preferred to apply the payment in some other manner, further inquiry would be necessary. Neither the trial court's decision nor this opinion establishes a general duty to inquire where there is no constructive knowledge of the party's intent or the source of the fund.

*By the Court.*—Judgment affirmed.